WATERS ET AL. *v.* MONROE COAL COMPANY, INC., ET AL.

(No. 76-105—Decided September 6, 1977.)

Court of Common Pleas of Muskingum County.

*Messrs. Gottlieb, Johnston, Beam & Joseph* and *Mr. Ross L. Johnson,* for plaintiffs.
*Messrs. Pomerene, Burns & Milligan* and *Mr. Lawrence Burns,* for defendants.

KNAPP, J. This is an action for a declaratory judgment construing the rights of the plaintiffs in a certain deed executed to the plaintiffs by their parents, who reserved life estates, and the rights and obligations of the various parties under a coal lease subsequently executed by the parental grantors and assigned to the Defendant Monroe Coal Company, Inc.

The matter was submitted to the court upon the pleadings and an Agreed Statement of Facts executed by the parties. Attached to the Agreed Statement of Facts is a copy of the deed and a copy of the coal lease from all of which the rights of the parties are to be construed.

On July 28, 1936, a warranty deed was executed by Fred H. Waters and Lillie Waters to Charles Byron

Waters, Emma Margaret Waters, Sarah Katherine Waters and William Harold Waters, the plaintiffs in this action. The pertinent portion of the deed which requires the construction of this court is as follows:

"There is reserved to the Grantors herein, a life estate, with the right to use, possess and sell from said land coal and timber and the products of said land, during their respective lives. And it is further reserved and stipulated, that the Grantees herein, or any of them, shall not sell, convey, dispose of or in any wise incumber their respective right or rights, but the same shall be to the grantees herein a life estate, and a fee simple title to their respective heirs."

Subsequent to the execution of this deed by the grantors, Fred H. Waters and Lillie Waters, the said Fred Waters, who had survived his wife, Lillie Waters, the other grantor, executed a lease on February 3, 1972, to E. C. McPherson, which lease was subsequently assigned to the defendant Monroe Coal Company, Inc. That portion of the coal lease which requires construction by the court concerns the term of the lease and reads as follows:

"The term of this lease is until the merchantable coal is fully worked out."

The first question necessary to be resolved is the determination of the nature of the rights acquired by the plaintiffs from their parents in the deed of July 28, 1936, as found of record in Deed Book 262, page 557 of the Muskingum County Deed Records. The deed is a normal warranty deed in all respects including the granting clause, the habendum clause and the warranty clause, except that the fourth paragraph contains this language:

"There is reserved to the Grantors herein, a life estate, with the right to use, possess and sell from said land coal and timber and the products of said land, during their respective lives. And it is further reserved and stipulated, that the Grantees herein, or any of them, shall not sell, convey, dispose of or in any wise incumber their respective right or rights, but the same shall be to the grantees herein a life estate, and a fee simple title to their respective heirs."

But for said clause the deed would have vested in the children of the grantors a full fee simple title.

The first sentence, however, in the paragraph in question reserves to the grantors a life estate "with the right to use, possess and sell from said land coal and timber and the products of said land, during their respective lives." Let us examine first the nature of the estate thereby reserved to the grantors.

2 Powell on Real Property 111, Paragraph 202(3), says in reference to a power, either limited or unlimited, to dispose of the affected land and to its effect upon a life estate:

"The great weight of authority in the United States is to the effect that the estate of the conveyee remains an estate for life despite the added power."

4 Thompson on Real Property 377, Section 1851, states:

"The leading rule holds to the principle that a life estate is not raised to a fee by giving the life tenant even an absolute power of disposition of the fee" and further, at page 381, "[t]hus a power of sale added to a life estate does not, as a general rule, enlarge the estate into a fee, absolute or qualified, especially where the life estate is expressly limited."

Section 1858, at page 428, says the following:

"If the life tenant with the power of disposition does not exercise the power, both the life estate and the remainder over are unaffected by the power."

1 Patton on Titles (2 Ed.) 485, Section 210 gives the law thusly:

"[I]t is generally held that a life estate is not enlarged into a fee by being coupled with a power of sale, even when there is added power in the life tenant to use the proceeds of the sale."

1 Restatement of Property 352, Section 111, states the following:

"A form of limitation effective to grant an estate for life in accordance with the rule stated in any one of Sections 107, 108, 109, or 110 is not prevented from granting an estate for life, and is not caused to create some type of estate other than an estate for life, by the fact that such form of limitation is accompanied by further language effective to create in favor of the conveyee a power, either limited or unlimited, to dispose of the complete property

in such land." An illustration given thereunder is: A, owning Blackacre in fee simple absolute, transfers Blackacre "to B for life with full power to dispose of the fee thereof at will." B receives an estate for life in Blackacre.

The case of *Tax Commission* v. *Oswald* (1923), 109 Ohio St. 36, sheds further light on our problem. There, a husband bequeathed to his wife his property, she to have full power to sell, deed and transfer any or all of it "as she may deem best to better her condition." "After the death of my wife whatever property remains of my estate I will and bequeath as follows: one-half (½) to J. W. Oswald or his issue; one-half (½) to J. M. Oswald or his issue."

The court concluded that the wife took a life estate coupled with the power to sell, deed and transfer "as she may deem best to better her condition" and that the gift over of what remained unconsumed amounts to a vested remainder in the whole of the property subject to be divested by the exercise of the power. Therein the court, at page 51, said "[a] power is not property, but a mere authority, and an absolute power of disposal is not inconsistent with an estate for life only. The gift of such power will not enlarge the life estate previously given but confers an authority in addition thereto. One may have a life estate and yet be empowered to convey an estate in fee simple."

From all of the foregoing it would appear that the proper interpretation to be given to the first sentence in the grantors' reservation is that it conveyed a life estate with the right to use, possess and sell from the said land the coal etc. and that the remaindermen had a vested estate, subject to be divested to the extent that the grantors would use, possess and sell.

The next inquiry should concern itself with the significance of the second sentence of the fourth paragraph of the deed. On first reading one may wonder whether the word "grantees" as used twice therein is misspelled and should have been "grantors"; however, further consideration makes us accept the fact that there was no typographical error and that the word "grantees" was intended in

both places.  One fact that impels us to the latter conclusion is that to do otherwise would create a conflict between the first and second sentences.

It is submitted that the significance of the first part of the second sentence is that the grantors are attempting to prevent any alienation by the grantees of their interests in the subject land.  Without this restriction it would be the right of the grantees to dispose of their interests if they so chose.  But can such a restraint prevail if the grantees are held to have a remainder in fee simple?

Of course this throws into question the meaning of the balance of the sentence starting with the word "but."  In trying to determine the true import of that part of the sentence one wavers between the view that the grantors were trying to create life estates in the children, following the grantors' life estates, followed by a fee simple title in their heirs and the other view that the draftsman used language which, applying the rule in Shelley's Case (not repealed in Ohio as to deeds until August 21, 1941) created a fee simple title in the children of the grantors (the deed being executed in 1936).

The court's conviction is that considered from its four corners, and with the rule in Shelley's Case applied, the deed conveyed to the children of the grantors a fee simple title following grantors' life estates but with a restraint in the alienation thereof by the grantees during grantors' life estates.

It is not necessary, however, to reach any definite conclusion as to what is the nature of the title vested in the children since under any interpretation the defendant coal company only received whatever interest may have been given them by the grantors and upon the death of the second of the grantors the estate of the coal company could not be greater than what it had been before his demise.

All that the coal company ever received was the lease given to E. C. McPherson and by him assigned over to it.

1A Thompson on Real Property 40, Section 161, deals with problems such as ours and says:

"There are three types of mineral conveyances: (a) 'leases' which are merely sales of profits, (b) mineral sev-

erances which are sales of the minerals in place and (c) sales of the subsurface strata. In order to determine whether an agreement constituted a sale of coal in place, three general principles can be applied: (1) the right must be exclusive in the vendee, (2) right must be to mine all the coal and (3) vendee must either pay the stipulated consideration or be compelled to mine or, what is the same thing, pay for the coal if not mined. A mineral severance can only be effected by a deed sufficient to convey an interest in land."

And again from the same section, at page 41:

"Although a mining lease is a conveyance of an interest in the land, there is a clear distinction between an absolute conveyance of the mineral in place and the grant of a mining right to enter upon the land and convert the mineral into personalty and dispose of it. In case of an absolute sale there is a severance of the title to the realty; in case of a lease there is no such severance, although the mining right entitles the lessee to extract the mineral. The determination must be made from the effect of the instrument creating the interest, not from the names applied by the parties."

And he concludes, at page 44, with this statement:

"By the great weight of authority, so-called mining leases are leases in fact as well as in name. * * * A mining lease is not a sale of land, nor a sale of minerals in the land, but a grant of the use and possession of the and for the purpose of removing the minerals during a specified period in consideration of a royalty payable as rent. A mineral deed creates a separate taxable estate, but a mineral lease does not."

From all this we must conclude that the interest of the coal company in the subject property ceased with the death of Fred Waters. Any equipment or buildings placed in or about the mine may be removed by the company but the interest in the coal terminated with the death of Fred Waters on December 29, 1974.

Judgment for plaintiffs in accordance with this opinion, quieting title in plaintiffs, etc.

*Judgment accordingly.*